IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BETH ANN DAVIS, | ) | CASE NO. 5:12CV02665 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION,[1] | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Beth Ann Davis ("Plaintiff" or "Davis") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental social security income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

## I.  Procedural History

Davis filed her applications for DIB and SSI on July 16, 2008.  Tr. 138.  In her applications, Davis alleged a disability onset date of March 1, 2006.  Tr. 138.  She alleged disability based on mental health issues and obesity.  Tr. 78, 81.  After denials by the state agency initially and on reconsideration (Tr. 78-83, 87-92), Davis requested a hearing (Tr. 27).

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

A hearing was held before Administrative Law Judge ("ALJ") Suzanne A. Littlefield on January 11, 2011.  Tr. 29-73.  Gene Burkhammer, an impartial vocational expert, also appeared at the hearing.  Tr. 65-72.

In her April 29, 2011, decision, (Tr.8-26) the ALJ determined Davis was capable of performing unskilled, sedentary work that exists in significant numbers in the national economy and, thus, Davis was not disabled.  Tr. 14-22.  Davis requested review of the ALJ's decision by the Appeals Council. Tr. 129.  On September 24, 2012, the Appeals Council denied Davis's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

## II. Evidence

### A.  Personal and Vocational Evidence

Davis was born in 1974.  Tr. 131.  On the day of the hearing she was 36 years old.[2] Davis did not graduate high school.  Tr. 159.  She completed school through eighth grade.  Tr. 159.  Davis worked temporary jobs through temporary agencies sporadically for the last fifteen years but was always placed on "Do Not Return" status by the hiring company.  Tr. 43, 155. Davis also previously worked as a site supervisor for Mobile Meals where she prepared pre-cooked meals for seniors.[3]  Tr. 39-41, 276.

Davis lives in an apartment with her son.  Tr. 161.  Davis reported that she cares for her son and their home.  Tr. 162.  Davis cleans, prepares simple meals, pays bills, handles a savings account, and uses a checkbook/money orders.  Tr. 162-163, 165, 181-182.

---

[2] The ALJ stated that Davis was 31 years old on the date of the hearing; however, Davis was born in the fall of 1974 and the hearing took place in the spring of 2011.

[3] Davis's last day worked is unknown as the records are inconsistent on this matter.  The records reflect that Davis last worked at Mobile Meals in 2003 (Tr. 276), 2004 (Tr. 393), 2005 (Tr. 211), and 2006 (Tr. 200).

### B.  Medical Evidence

Davis is morbidly obese with chronic back pain and a history of mental health issues.  Tr. 210, 218.

#### 1.    Treating Sources – Physical Health

On October 26, 2007, Davis visited Dr. Carrie Caruso requesting a refill of her thyroid medication and complaining of a backache after she pulled a muscle cleaning.  Tr. 218.   Davis reported that Tylenol alleviated her back pain.  Tr. 218.  On examination, Dr. Caruso noted that Davis had normal range of motion.  Tr. 218.  Davis was counseled about diet and exercise, was prescribed Synthroid for hypothyroidism and, because her back pain was minimal, was told to take Tylenol as needed.  Tr. 219.

On March 19, 2009, Davis visited Mandeep Saran, Certified Registered Nurse Practitioner ("CRNP"), and reported that she had been walking, taking her medications, had no back pain, and felt much better.  Tr. 332.   Davis was taking Synthroid, Prozac (antidepressant), and Ibuprofen.  Tr. 333.

On January 15, 2010, Davis visited Leila Denise Boville, CRNP, to have her thyroid checked and requested paperwork be filled out for her disability claim.  Tr. 370.  One month later, Davis returned to Boville complaining of chronic knee pain.  Tr. 363.  Davis requested a cane to help relieve some of the weight on her knees.  Tr. 363.  Boville stated that Davis's knee pain is probably related to obesity and a cane would not likely help.  Tr. 363.  Davis also requested a walker; however, Boville noted that Davis ambulated without difficulty.  Tr. 363.

On April 9, 2010, Davis presented to Diane Duff, CRNP, complaining of back pain.  Tr. 390.  Davis was prescribed Naproxen, Flexeril, and Toradol.  Tr. 390.

On May 3, 2010, Davis returned to Dr. Caruso complaining of back pain.  Tr. 386.  Davis did state, however, that her back pain improved in the last month and is relieved using Tylenol. Tr. 386.  On examination, Dr. Caruso found normal strength, normal gait, no depression or agitation.  Tr. 387.  Both Davis and Dr. Caruso felt that Davis's back pain was related to obesity. Tr. 388.  Davis was advised to take acetaminophen for the pain.  Tr. 388.

On March 25, 2010, Davis reported to Summa Health Systems for a functional capacity examination ("FCE").  Tr. 393.  The examination noted that Davis was unable to stoop, squat, bend, or crouch.  Tr. 397.  Davis was also found to be able to carry 10 pounds and to lift from knuckle to shoulder a maximum of 10 pounds and from shoulder to overhead a maximum of 5 pounds.  Tr. 396.  With regard to frequent lifting, Davis was able to carry 3 pounds and lift from knuckle to shoulder only 3 pounds and from shoulder to overhead 1 pound.  Tr. 396.   Davis was found to function at least at the sedentary level.  Tr. 400.  However, when evaluated at Summa, Davis was assessed as having limited participation in strength testing secondary to over guarding.  Tr. 401.  The evaluator cautioned that Davis's demonstrated physical function at the evaluation should not be used to project actual work capacity since Davis may be able to function at a level higher than she was willing to perform or that she perceives she is able to perform, and that "due to sub-maximal effort it [was] difficult to identify her likely true abilities and limitations in material handling."  Tr. 401.

### 2.    Treating Sources – Mental Health

Davis was a client of Portage Path Behavioral Health Center ("Portage Path") on several occasions since 1996.  On July 20, 2007, Davis visited Portage Path complaining of depressive symptoms.  Tr. 210.  Davis stated that she had problems with depression since her teens and had attempted suicide approximately 20 times in her teen years.  Tr. 210.  A mental status evaluation

revealed that Davis had a depressed, irritable, and anxious mood, with average activity, full affect, cooperative behavior, and intact judgment and insight.  Tr. 211-21.  Davis was diagnosed with a mood disorder not otherwise specified, and was prescribed Celexa (antidepressant).  Tr. 213.  Davis also was assigned a Global Assessment Functioning (GAF) score of 48.[4]  Tr. 213.

Davis again visited Portage Path on October 22, 2008.  Tr. 297.  At that time, Davis complained of being "depressed, suicidal, and overwhelmed."  Tr. 297.  She was diagnosed with mood disorder, not otherwise specified, and assigned a GAF score of 50.  Tr. 298-99.  Davis was prescribed Prozac because she reported good results from Prozac in the past and Dr. Yuan Thakore, M.D. recommended therapy to Davis.  Tr. 299.

On November 19, 2008, Davis reported to Donna Laughlin, Psychiatric Mental Health Clinical Nurse Specialist, at Portage Path stating that she felt much better since starting Prozac.  Tr. 302.  Davis rated her depression and anxiety a "0" on a scale of 1-10 with 10 being the worst.  Tr. 302.  On examination, Ms. Laughlin noted that Davis had good hygiene and was cooperative, friendly, and talkative with appropriate behavior.  Tr. 302.

On June 3, 2009, Ms. Laughlin filled out a Mental Status Questionnaire for Davis, noting that Plaintiff had normal conversation and speech; upbeat mood and fairly bright affect; some paranoia; some short-term memory loss; decreased abstract reasoning and limited fund of information.  Tr. 292.  Ms. Laughlin opined that Davis had limited insight and judgment; however, her progress notes from the same day noted that Davis had fair/adequate insight and judgment.  Tr. 292, 300.  Ms. Laughlin also opined that Davis's ability to remember, understand, follow directions, maintain attention, and sustain concentration, persistence, and pace were

---

[4] GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  *Id.*

limited.  Tr. 293.  Ms. Laughlin further opined that Davis was fearful and paranoid around people and she would not react well to pressure of any kind.  Tr. 293.  However, in Ms. Laughlin's treatment notes that same day, Davis reported that the higher doses of Prozac and Lamictal were helpful and she rated her depression a "0," her anxiety a "5," and her back pain a "10."[5] Tr. 300.

In November 2009, Andrea Reddest, Licensed Independent Social Worker, completed a Mental Medical Source Statement on Davis's behalf.  Tr. 351-352.  Ms. Reddest opined that Davis would have noticeable difficulty more than twenty percent of the work day or work week performing the following:  completing a normal work day or work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, responding appropriately to changes in the work setting, and traveling to unfamiliar places or using public transportation.  Tr. 351-52.   Ms. Reddest opined Davis would have no difficulty with simple instructions or sustaining an ordinary routine without special supervision. Tr. 351.

### 3.   State Agency Consultative Opinions

#### a. State agency physical consultative examining physician's opinion

On April 29, 2009, Davis met with Nadia McKitty, M.D., consultative examiner, for a medical examination.  Tr. 276.  Dr. McKitty found that Davis was 5'7" and weighed 369 pounds. Tr. 277.   She diagnosed Davis as morbidly obese, with chronic back pain secondary to degenerative disease, and unstable thyroid levels.  Tr. 278.   Dr. McKitty noted that Davis is able to sit, stand, and walk on her own without the use of any assistive devices.  Tr. 277.  Davis was

---

[5] On a scale of 1-10, with 10 being the worst.

also noted to be able to bathe/shower, comb her hair, brush her teeth, zip zippers, and button a shirt on her own as well.  Tr. 277.  Dr. McKitty opined that Davis is capable of being employed in a position that does not require a great deal of physical activity due to her morbid obesity and that also does not require her to lift more than 10-15 pounds at a time.  Tr. 278.

### b. State agency psychological consultative examining physician's opinion

On April 30, 2009, Davis met with Margaret Zerba, Ph.D., consultative examiner, who diagnosed Davis with post-traumatic stress disorder with panic attacks, major depressive disorder, and attention deficit hyperactivity disorder not otherwise specified.  Tr. 287.  Dr. Zerba assigned a GAF score of 45.[6]  Tr. 287.  Regarding her work-related mental abilities, Dr. Zerba found that Davis was markedly impaired in her ability to relate to others in the work environment and to withstand the stress and pressures of day to day work activity.  Tr. 287-88.  Dr. Zerba found no impairment in Davis's ability to understand and follow directions and in her ability to perform simple, repetitive tasks.  Tr. 287.

### 4. State Agency Reviewing Physician's Opinions

### a. State agency psychological reviewing physician's opinion

On June 17, 2009, state agency reviewing physician Vicki Casterline, Ph.D., reviewed the evidence of record and completed a Mental RFC Assessment.  Tr. 307-310.  Dr. Casterline opined that Davis is moderately limited in the following:  the ability to carry out detailed instructions, complete a normal workday and workweek without interruptions from psychological-based symptoms, perform at a consistent pace without an unreasonable number

---

[6] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  *Id.*

and length of rest periods, to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and travel in unfamiliar places or use public transportation.  Tr. 307-308.  Dr. Casterline noted that Davis's records reflect that her symptoms improved with medication and treatment.  Tr. 309.  Dr. Casterline further opined that Davis is capable of routine work in a low stress environment, with minimal social interaction. Tr. 309.

### b.  State agency physical reviewing physician's opinion

On June 29, 2009, state agency medical consultant Edmond Gardner, M.D., reviewed the medical evidence of record.  Tr. 342-349.  Dr. Gardner opined that Davis had a normal gait and normal strength in all major muscle groups; however, Davis's weight, decreased range of motion, and back pain would continue to deteriorate.  Tr. 347.  Dr. Gardner further opined that Davis's symptoms are severe enough to pose a limitation, but that she is capable of performing sedentary work.  Tr. 347.

### C.  Testimonial Evidence

### 1.  Davis's Testimony

At the administrative hearing, Davis was represented by counsel.  The ALJ asked Davis what the significance of her disability onset date was and Davis replied, " I have no idea, I don't know.  I think that's when I quit working, when I couldn't work no more."  Tr. 37.  Davis testified she worked part-time at Mobile Meals heating/preparing meals for seniors.  Tr. 38, 40. Davis stated she couldn't handle doing the job for longer than four hours a day due to the stress dealing with the seniors, her bosses, and the health department regulations.  Tr. 41.   Davis also testified that she worked some temp jobs but kept getting put on Do Not Return Status.  Tr. 43.

When asked why, Davis responded, "I don't know why but I always get DNR'd, I think it's because I'm not pretty enough, I'm not skinny enough, I don't get along with people too --- I don't know." Tr. 43-44.

With regard to her disability, Davis claimed she has back problems and that she was prescribed a cane by her doctor.  Tr. 46, 48.   Davis also claimed she was paranoid and afraid of people because ten years ago her husband stabbed her in the back.  Tr. 51.

Davis stated that, on a daily basis, she usually wakes up around 12:30-1:00 in the afternoon, watches TV, gets coffee, and rolls and smokes cigarettes.  Tr. 53, 60.  She stated she doesn't do much else because she just wishes she would die.  Tr. 55.  Davis testified that she lives with her son and his father helps with the child.  Tr. 53-54.  She stated that she does help with the dishes.  Tr. 59-60.   Davis also testified that she has difficulty using the bathroom by herself and putting on her shoes because she weighs approximately 400 lbs.  Tr. 55, 64.

## 2.     Vocational Expert's Testimony

 Vocational Expert Gene Burkhammer ("VE") testified at the hearing.  Tr. 64-72.  The VE testified to the exertional and skill level of Davis's past work.  Tr. 66-67.  He indicated that Davis's past work as a "dietary aide" at Mobile Meals[7]  was at a light or medium exertional level.  Tr. 66.  The ALJ propounded three hypotheticals to the VE.

First, the ALJ asked the VE to assume an individual of Davis's age, education, and experience with no exertional limitations who would need simple, routine, repetitive work in a low stress environment with minimal social interaction.  Tr. 67.   The ALJ asked whether such a hypothetical individual could perform Davis's past work as a dietary aide.  Tr. 67. The VE

---

[7] The hearing transcript at page 36 (Tr. 66) refers to Davis past job as Mobile Wheels.  All other references in the record refer to the job as Mobile Meals as cited *supra*.

testified such a hypothetical individual would not be able to perform Davis's past work as a dietary aide. Tr. 67.

Next, the ALJ asked the VE to assume an individual of Davis's age, education, and experience who is limited to sedentary work with occasional ramps and stairs; no ladders, ropes, or scaffolding; occasional balance, stooping, kneeling, crouching, and crawling; and the same non-exertional simple, routine, repetitive work in a low stress environment with superficial social interaction. Tr. 68. The VE testified such a hypothetical individual also could not perform Davis's past work as a dietary aide. Tr. 68. The VE testified, however, that such an individual could perform sedentary work such as an addresser (160,000 jobs nationally and 1,000 jobs locally), account clerk (90,000 jobs nationally and 300 jobs locally), and food and beverage order clerk (90,000 jobs nationally and 300 jobs locally). Tr. 68-69.

For the third hypothetical, the ALJ asked the VE to assume the same person in the second hypothetical with the modification that this individual would be allowed to change positions as needed; cannot squat, stoop, or lift from the floor to the knuckle; would be able to sit up to one-third of the day; be able to stand up to one-third of the day; be able to walk up to one-third of the day; could carry up to three pounds frequently, and up to ten pounds occasionally, pull three pounds frequently, 10 pounds occasionally; no stairs or ladders; occasional over shoulder work; no low level work; occasional grasping up to two-thirds or more of the day; and reaching forward up to one-third of the day. Tr. 70. The VE testified there would be no employment for such a hypothetical individual. Tr. 70-72.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

 In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.     If the claimant is doing substantial gainful activity, he is not disabled.

2.     If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.     If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.     If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.     If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920[8]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In her April 29, 2011, decision, the ALJ made the following findings:

1.  Davis meets the insured status requirements of the Social Security Act through September 30, 2009.  Tr. 13.

2.  Davis has not engaged in substantial gainful activity since March 1, 2006, the application date.  Tr. 13.

3.  Davis has the following severe impairments:  an affective disorder and obesity.  Davis also has a non-severe impairment:  back pain.  Davis does not have an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[9]  Tr. 13-16.

4.  Davis has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can only occasionally climb ramps and stairs, and cannot climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she may have only superficial social interaction with the public and with coworkers; and she is limited to simple, routine, repetitive work in a low stress environment.  Tr. 15.

5.  Davis is unable to perform any past relevant work.  Tr. 20.

---

[8] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq, corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[9] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

6.      Davis was born in 1974 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability date.  Tr. 21.

7.      Davis has a limited education and is able to communicate in English.  Tr. 21.

8.      Transferability of job skills is not an issue in this case because Davis's past work is unskilled.  Tr. 21.

9.      Considering Davis's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 21.

10.     Davis has not been under a disability, as defined in the Social Security Act, since March 1, 2006.  Tr. 22.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council confirmed it on September 24, 2012.  Tr. 1-5.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Plaintiff argues that the ALJ erred in three ways.  First, Davis argues that the ALJ did not give appropriate weight to the treating source opinions and did not consider the record as a whole.  Doc. 13, p. 10.  Second, Davis argues that the ALJ did not state valid reasons for discrediting Davis.  Doc. 13, p. 13.  Third, Davis contents that the ALJ did not meet her burden at Step Five of the Sequential Evaluation.  Doc. 13, p. 16.

### B.      Defendant's Arguments

In response, the Commissioner argues that the ALJ gave appropriate weight to the medical opinions and substantial evidence supports the ALJ's RFC assessment.  Doc. 14, p. 12. The Commissioner also asserts that the ALJ appropriately evaluated the credibility of Davis's subjective complaints because the ALJ is accorded great discretion in credibility findings and

due to the inconsistencies in Davis's statements.  Doc. 14, pp. 16-17.  Lastly, the Commissioner argues that the ALJ properly accepted the VE's testimony in response to a hypothetical question that included all of Davis's credibly established limitations.  Doc. 14, p. 18.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A.  The ALJ gave appropriate weight to the professional opinion evidence

Davis contends that the ALJ did not give appropriate weight to treating sources.  Doc. 13, pp. 10-11, 18.  Davis states that Dr. Minolta assigned Davis a GAF score of 50, but the ALJ did not mention this treating source.  Doc. 13, p. 11.  Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If an ALJ decides to give a

14

treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *Wilson*, 378 F.3d at 544.

There is only one reference to Dr. Minolta in the medical records.  Tr. 383.  On September 15, 2010, Dr. Minolta signed off on a treatment plan review, along with Ms. Laughlin and Ms. Reddest, which indicated that Davis had not engaged in therapy since March of 2009 and had a GAF score of 50.  Tr. 383.  Dr. Minolta did not have an ongoing relationship with Davis and, therefore, was not a treating source.  Thus, his opinion[10] was not entitled to controlling weight.

The treatment plan does not indicate if Dr. Minolta examined Davis or simply signed off on the plan by Ms. Laughlin and Ms. Reddest, who met with Davis.  Even if Dr. Minolta personally met with Davis on April 15, 2010, the record does not reflect any other visits with Dr. Minolta. A treating physician is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you with medical treatment or evaluation and *who has, or has had, an ongoing treatment relationship with you."* 20 C.F.R. § 404.1502 (emphasis added) *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' " *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir.2007) (quoting 20 C.F.R. § 404.1502).  For the aforementioned reasons, Dr. Minolta is not a treating physician.[11]  The SSA requires ALJs to give reasons only for *treating* sources. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d

---

[10] We will assume for purpose of this R&R that the treatment plan constitutes a medical opinion.

[11] Although Plaintiff argues that the ALJ did not mention Dr. Minolta's April 15, 2010, treatment plan in her opinion, that is not correct.  Although the ALJ did not specifically name Dr. Minolta, the ALJ did consider this treatment plan.  Tr. 17.

873, 876 (6th Cir. 2007).  Accordingly, Davis's argument that the ALJ did not give appropriate weight to the treating physician is without merit.

Davis also contends that the ALJ erred by stating that she gave consideration or weight to the opinions of Ms. Laughlin, Ms. Reddest, Dr. Zerba, and Dr. Casterline but ignored limitations found by those sources in her RFC and in her hypothetical questions.  Doc. 13, pp. 10-13.  Davis does not argue that these are treating sources and does not challenge the weight assigned to these sources.  Davis only disputes the RFC limitations and hypothetical in relation to those doctors' opinions.  Accordingly, those opinions will be reviewed and discussed in the Step Five RFC review under section C below.

### B.  The ALJ properly evaluated Davis's credibility

Davis argues that the ALJ did not state valid reasons for discrediting her subjective complaints.  Doc. 13, p. 13.   A claimant's subjective complaints can support a disability claim as long as there is objective medical evidence of the underlying medical condition in the record.  *See Jones*, 336 F.3d at 475; *see also Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 150-51 (6th Cir. 1990).  "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Jones*, 336 F.3d at 475 (citing 20 C.F.R. § 404.1529(c)(3)).  Where the symptoms, and not the underlying condition, form the basis of the disability claim, the ALJ uses a two-part analysis in assessing the credibility of an individual's subjective statements about his or his symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Id.*  Second, if such an impairment exists, then the ALJ must evaluate the intensity,

persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.* The ALJ

should consider the following factors in evaluating a claimant's symptoms:

> 1) the individual's daily activities;
> 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3) factors that precipitate and aggravate the symptoms;
> 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.; see also* 20 C.F.R. §§ 404.1529(c) and 416.929(c); Social Security Rule ("SSR") 96-7p,

1996 WL 374186, *3.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly

consider the credibility of a claimant when making a determination of disability." *Jones,* 336

F.3d at 476 (citations omitted). An ALJ's credibility assessment must be supported by substantial

evidence but "an ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility." *Walters,* 127 F.3d at 531. It is the province of the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers,*

486 F.3d at 247. In this case, the ALJ stated:

> Claimant's activities of daily living belie her allegations of complete disability. She
> needs assistance to put on her shoes and socks, but is otherwise able to dress herself, and
> groom herself. She can brush her teeth, comb her hair, and mostly take care of her
> hygiene, although she needs some assistance with bathing. She is able to cooks (sic) for
> herself and her adolescent son, and do some housekeeping chores like washing dishes,
> although her son's father does take over responsibility for some of these duties. She is
> able to use public transportation. She shops; she stated that she rides her bike to get
> groceries.

Moreover, the claimant made inconsistent statements.  The claimant testified that she needs assistance bathing, dressing, and toileting.  She also testified that she does not shop, cook, or clean or do laundry—that her son's father does it.  However, on her function reports she stated that she did those things without assistance.  In addition on March 25, 2010, she told her doctor that she is independent with her basic care, without difficulty.  (3E, 6E, 18F, hearing testimony)  Also, on October 26, 2007, she reported to the doctor that she thought she pulled a muscle while cleaning.  (Ex. 2F, p. 4, Ex. 12F, p. 14)  She also stated that on February 5, 2009, she was carrying a bag of groceries and suddenly had a sharp shooting pain in her back that radiated into her thighs.  (Ex. 12F, p. 11) She also testified that she has terrible back pain, yet on February 15, 2010, she reported that she had no back pain.  (Ex. 16F, p. 3)

Further, the claimant testified that she was prescribed a cane for ambulation, but the records indicate that she requested it to decrease the weight on her knees.  The cane was prescribed despite the opinion of the doctor that the cane would probably not help since the knee pain was related to obesity.  The doctor also noted that the claimant's gait was steady and that she ambulated without difficulty.  (Ex. 16F, pp. 3, 5)

In addition, the claimant testified that she is depressed every day and does not get out of bed except to get food or use the restroom.  However, the records from Portage Path show that in November 2008 and June 2009 she rated her depression as 0/10.  Also, she reported that she has been wanting to go out and do things instead of sitting in the house.  She also said that she was not as angry and mean when taking Lamictal.  (Ex. 10F and 17F)

Additionally, the claimant has also been non-compliant with medical treatment.  She gained four pounds in one week, but admitted that she had not been taking her Synthroid as prescribed.  (Ex. 5F, p. 1)

Moreover, the records show that she has a good response to Prozac.  She presents as cooperative, euthymic, reactive, friendly, talkative, smiling with good eye contact in the evidence of record, with an upbeat mood and bright affect.  (Exs. 8F, 10F, 15F and 17F).

In sum, the claimant is found to be only partially credible.

Tr. 19-20.

As discussed, the ALJ credited Davis with limitations resulting from her medically determinable impairments but also found, based on substantial evidence in the record, that the limiting effects of those impairments were not as severe as Davis alleged and did not preclude all work. Tr. 19.  The ALJ reasonably concluded that Davis was not fully credible in alleging that

she was incapable of performing any sustained work activity and the ALJ's decision is supported by substantial evidence. The ALJ's credibility determination is therefore entitled to deference. *See, e.g., Cross v. Commissioner of Social Sec.,* 373 F.Supp.2d 724, 733 (N.D. Ohio 2005) (finding that the ALJ need not analyze all seven factors identified in the regulations in assessing a claimant's credibility). If the ALJ rejects a claimant's testimony as not being credible, the ALJ must state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); SSR 96-7p, 1996 WL 374186, *2. The ALJ met her burden.  She stated reasons that are clear as to the weight given to Davis's statements and she thoroughly discussed the reasons for assigning that weight.

### C.  The ALJ's Step Five determination is supported by substantial evidence.

Davis's final argument is that the ALJ did not have substantial evidence to support a finding that the Plaintiff was capable of sustained full time work and, as such, did not meet the Commissioner's burden at Step Five of the sequential evaluation.  Doc. 12, p. 14.  It appears that Davis is arguing more specifically that the ALJ failed to account, in the VE hypothetical and RFC, for limitations on Davis's ability to deal with supervisors and co-workers, her ability to complete a normal work day or work week, and her ability to deal with stress in the workplace. Doc. 13, p. 17.  Defendant argues that determination of Davis's RFC rested with the ALJ and the ALJ appropriately determined the RFC based upon the relevant evidence. 16, p. 6.

The Commissioner correctly asserts that the responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c).  The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. §§

404.1545(a); 404.1546(c); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC"); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding"). Social security rulings further provide that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR No. 96-8p, 1996 SSR LEXIS 5, * 20. Additionally, while an ALJ is not required to incorporate all evidence into the RFC, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR No. 96-8p, 1996 SSR LEXIS 5, * 19.

With regard to Davis's mental impairments, the ALJ limited Davis to only superficial social interaction with the public and with coworkers and simple, routine, repetitive work in a low stress environment.  Tr. 15.  Davis argues that the opinions of Ms. Laughlin, Ms. Reddest, and Dr. Zerba support greater limitations. Doc. 13, pp. 11-12. Davis states that both Ms. Laughlin and Dr. Zerba, a consultative examiner, found Davis significantly impaired in her ability to withstand stress and pressures of day-to-day work and in her ability to relate to others in the work environment. Tr. 287-88.  The ALJ stated that she gave significant weight to the opinion of Dr. Zerba and gave great consideration and some weight to Ms. Laughlin's opinion.[12] Tr. 18.  The ALJ also gave some consideration and weight to Ms. Reddest[13] who indicated Davis would have difficulty completing a normal workday and work week without interruptions from

---

[12] Davis does not argue that the ALJ assigned the wrong weight to these non-treating physicians.  In fact, the ALJ appropriately noted that Ms. Laughlin, a psychiatric mental health clinic nurse specialist, is not an acceptable medical source.  Tr. 18.

[13] The ALJ appropriately noted that Ms. Reddest, a licensed social worker, is not an acceptable medical source.  Tr. 18.

psychologically-based symptoms, interacting appropriately with the general public, and responding to changes in the workplace.  Tr. 351-352; Doc. 13, pp. 12-13.  Based on these reports, Davis asserts that the RFC should have included limitations on (a) Davis's ability to deal with supervisors and co-workers, (b) her ability to complete a normal work day or work week, and (c) her ability to deal with stress in the workplace.  Doc. 13, p. 17.  Davis's claims are without merit as the RFC included these limitations.

The RFC included limitations on social interaction.  The RFC provides that Davis is limited to only superficial social interaction with the public and with coworkers.[14]  With regard to the opinion of Dr. Zerba that Davis is markedly impaired in her ability to withstand stress and pressures of day-to-day work,[15] the RFC appropriately accounted for Davis's depression and stress/pressure issues by limiting her to simple, routine, repetitive work in a low stress environment. In addition, the RFC is consistent with the opinions of Dr. Zerba and Ms. Reddest insofar as they found Davis's ability to understand and complete simple, repetitive tasks is not impaired.

To the extent Davis argues that the RFC did not fully account for her inability to complete a normal work day or work week because it should have included a limit on the number of days or hours she is required to work, the ALJ is not required to incorporate all evidence into the RFC.   The ALJ explained that, in reviewing all of the evidence, she did not find Davis's symptoms were so severe as to prohibit her from performing all basic work activities.  Tr. 19.  Furthermore, although the ALJ gave some weight to the opinions of Zerba, Laughlin, and Reddest, the ALJ also stated that she gave great weight to the opinion of Dr.

---

[14] Davis's RFC does not include language limiting her dealings with supervisors; however, none of the sources cited by Davis opine that she would have a limitation specifically dealing with supervisors.

[15] Dr. Zerba indicated that the basis for her opinion was Davis's depression, suicidal thoughts, frequent panic attacks with persistent fears of dying, low self-esteem, learning problems, fair-poor insight and judgment.  Tr. 287-88.

Casterline, state agency psychological consultant.  Tr. 18.  Dr. Casterline opined that Davis is capable of routine work in a low-stress environment with minimal social interaction.  Tr. 18.  Dr. Casterline found that Davis's symptoms are severe enough to pose a limitation on her ability to deal with social interaction, but she has responded well to medication and treatment.  Tr. 309.

The ALJ found Dr. Casterline's opinion consistent with medical records, including records that show that, in November 2008 and June 2009, Davis rated her depression as 0/10 and that she reported a good response with Prozac and Lamictal.  Tr. 20.  Additionally, as previously discussed, the ALJ properly found that Davis's subjective complaints were not credible as to the severity of her impairments.  Accordingly, substantial evidence supports the ALJ's RFC finding.

Davis further argues that the VE's testimony does not constitute substantial evidence because it did not include the limitations stated above.[16]  However, the ALJ relied on VE testimony in response to a hypothetical[17] that incorporated the limitations that, as discussed above, the ALJ determined were credible and supported by the record[18].  *See Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) ("[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence . . . [the] [h]ypothetical questions . . .  need only incorporate those limitations which the ALJ has accepted as credible") (internal citations and quotations omitted).  Davis failed to demonstrate that the ALJ's RFC and

---

[16] (a) Davis's ability to deal with supervisors and co-workers, (b) her ability to complete a normal work day or work week, and (c) her ability to deal with stress in the workplace.

[17] The ALJ asked the VE to assume an individual of Davis's age, education, and experience who is limited to sedentary work with occasional ramps and stairs; no ladders, ropes, or scaffolding; occasional balance, stoop, kneel, crouch, and crawl; and the same non exertional simple, routine, repetitive work in a low stress environment with superficial social interaction.  Tr. 68.  The VE testified, however, that such an individual could perform sedentary work such as an addresser, account clerk, and food and beverage order clerk.  Tr. 68-69.

[18] Davis also makes an argument that the ALJ should have accepted the VE's third hypothetical limiting Davis further based on the FCE completed by Summa Health in March 2010.  Doc. 13, p. 11.  However, as the ALJ pointed out, the FCE found that Davis had limited participation in strength testing secondary to over guarding and the evaluator cautioned that demonstrated physical function should not be used to project actual work capacity and that, due to submaximal effort, it is difficult to identify her true abilities and limitations.  Tr. 18, 401.  Moreover, the evaluator found that Davis should be able to perform at least at the sedentary level.  Tr. 18, 401.

ultimate disability determination were not supported by substantial evidence. Thus, Davis's request for reversal and remand based on the argument that the ALJ did not meet the Commissioner's burden at Step Five is without merit.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated: January 22, 2014

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).